NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0332n.06

No. 26-3075

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jul 23, 2026

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| DAVID S. TROUTMAN, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: CLAY, MURPHY, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, J., delivered the opinion of the court in which CLAY, J., concurred. MURPHY, J. (pp. 12–25), delivered a separate dissenting opinion.

BLOOMEKATZ, Circuit Judge. David Troutman appeals the district court's imposition of three conditions of his upcoming supervised release. Because he is about to be released from incarceration and will be subject to these terms, we expedited this matter. After reviewing the record, we agree with Troutman that the district court abused its discretion by ordering these special conditions without explaining its reasons on the record. Indeed, the government makes scant attempt to defend the procedural reasonableness of the district court's decision as to these conditions. Accordingly, we vacate the district court's order of the challenged special conditions and remand to the district court.

## BACKGROUND

Troutman challenges the conditions of supervised release attached to his most recent sentence. But recounting some of his prior convictions and sentences is necessary to understand

the parties' arguments here. So we describe just some of his extensive criminal history before explaining his sentence in the instant matter. None of the relevant facts are disputed.

*2018 Sentence.* In 2018, Troutman pleaded guilty to possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). As part of his plea agreement, Troutman waived the right to appeal his conviction or sentence, except in circumstances not relevant here.

For this crime, the district court sentenced Troutman to 55 months' incarceration followed by a three-year term of supervised release. Troutman's lengthy criminal history contributed to his Guidelines range, which the district court relied on in fashioning Troutman's sentence. Troutman had multiple prior convictions related to drugs and theft. Indeed, Troutman recognizes that he has a history of drug and alcohol abuse. As the presentence report described, Troutman was also convicted for sexual battery thirteen years ago, stemming from a horrific crime where Troutman choked his then-girlfriend with his penis. *See* Ohio Rev. Code § 2907.03(A)(1).

Following probation's sentencing recommendations, the district court imposed several special conditions of supervised release when sentencing Troutman for the felon-in-possession conviction. Three are critical in this case. *First*, the district court ordered Troutman to participate in a sex offender assessment. *Second*, it required Troutman to submit to periodic polygraph examinations. And *third*, it said that Troutman must participate in sex-offense specific treatment as directed by the probation office. The full text of these three conditions the district court imposed in 2018 read:

> Sex Offender – The defendant must participate in a sex offense specific assessment.

> Polygraph Examination – The defendant must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that defendant is in compliance with the requirements of supervision or treatment program.

> Sex Offender Assessment – The defendant must participate in a sex offense-specific treatment and follow the rules and regulations of that program. The probation officer will supervise participation in the program (provider, location, modality, duration, intensity, etc.)[1]

2018 Judgment, R. 25, PageID 117. For ease of reference, we refer to these three special conditions as the "sex-offender conditions." Troutman did not object to the sex-offender conditions as part of his 2018 sentence for possessing a firearm as a felon.

After Troutman served his 55-month term of incarceration, he was released in April 2023 and began his three-year term of supervised release subject to these conditions and others. Troutman violated his supervised release, which brings us to this case.

*2026 Sentence.* Troutman violated the terms of his supervised release in fall 2025. Prior to that, he had complied with the terms of his release, including the sex-offender conditions. As Troutman's probation officer noted, Troutman completed his sex offender assessment in June 2023, shortly after his release from prison. Based on his assessment, he was not recommended for sex offender treatment. Troutman did attend mental health and substance abuse counseling.

Although he was initially compliant with the terms of his release, in October 2025 Troutman assaulted his girlfriend. As detailed in a police report, Troutman became angry while intoxicated and shoved his fingers down her throat, causing her to cough up blood. The domestic violence charges against him from this incident were dismissed because Troutman's girlfriend would not cooperate with the prosecution. While probation's violation report relied on this

---

[1] Confusing to us, the third condition here is titled "Sex Offender Assessment" when the first condition requires the assessment and this third condition requires treatment. Additionally, we note that although this third condition requires treatment, the treatment seems predicated on the assessment, so treatment is not necessarily mandated by this condition. Indeed, given his assessment, it appears as though probation has not required Troutman to participate in any sex-offense treatment.

incident, Troutman also admitted to a separate "altercation[]" with the same girlfriend. Revocation Hr'g Tr., R. 50, PageID 226. There, the police report states that he pushed her to the ground, grabbed her mouth, and lightly bruised her neck.

At the revocation hearing, beyond arguing that Troutman should not be reincarcerated, Troutman's counsel directly addressed the sex-offender conditions. Initially, she expressed her view that the district court should not have imposed the sex-offender conditions in the 2018 sentencing because they were not related to the felon-in-possession charge. At the end of the hearing, she objected to the reimposition of the sex-offender conditions as part of the revocation sentence too.

The government did not address the sex-offender conditions explicitly, but did "point out" that Troutman had "a prior sexual battery conviction" for "gagg[ing] a woman with his penis," and then violated supervised release by "sticking his hands down a woman's throat." *Id.* at PageID 223–24. Because of this "consistent type of conduct," the government argued that Troutman needed to "serve some time in prison, and then continue on his anger management because there's clearly some issues there he needs to work out." *Id.* at PageID 224.

The probation officer did not address the sex-offender conditions at the hearing. Instead, the officer recommended an "alcohol condition" prohibiting possession and use of alcohol, given that "increased drinking" was an underlying cause of the domestic violence. *Id.* The officer did not otherwise weigh in on Troutman's sentence.

The district court calculated the Guidelines sentencing range as eight to fourteen months, and varied downward, sentencing Troutman to six months' imprisonment, to be followed by one year of supervision "with the same conditions" as the 2018 sentence, plus the alcohol condition. *Id.* at PageID 228. The district court never directly explained why it believed the sex-offender

conditions were justified. In its colloquy with Troutman, the district court told him, "You've got sex offenses in the past." *Id.* at PageID 226. It further emphasized that Troutman took "advantage of a weak and vulnerable person," and that the court had "a responsibility to her, . . . that's she's protected." *Id.* at PageID 226–27. When Troutman's counsel objected to the reimposition of the sex-offender conditions at the end of the hearing, the court responded that it would "take a look at that," and then adjourned the hearing. *Id.* at PageID 228. The written order that followed ordered a year of supervised release on the revocation, including the sex-offender conditions.

Troutman filed a timely appeal of the district court's imposition of the sex-offender conditions as part of his revocation sentence.

## ANALYSIS

Troutman challenges the district court's reimposition of the sex-offender conditions. Specifically, he argues that the district court's imposition of these conditions as part of his revocation sentence was procedurally unreasonable because the district court did not adequately explain its reasoning on the record. *See United States v. Widmer*, 785 F.3d 200, 203 (6th Cir. 2015). We review this challenge for abuse of discretion.[2] *United States v. Barcus*, 892 F.3d 228, 235 (6th Cir. 2018). But even under this deferential standard of review, we agree with Troutman. Our review of the record reveals that the district court abused its discretion by failing to explain how the sex-offender conditions reasonably furthered the purposes of sentencing.

The district court has broad discretion to impose special conditions of supervised release, as long as the conditions further the purposes of sentencing and are not more restrictive than

---

[2] The government contends we should review for plain error, since Troutman did not object to these conditions in his original 2018 sentencing hearing. For reasons we discuss below, however, this misses the mark. Troutman does not now object to the imposition of those charges in 2018. Rather, he objects to their reimposition in 2026. Because he did object in 2026, abuse of discretion review is proper.

necessary to do so. As the supervised release statute establishes, these conditions must satisfy three inquiries. *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997). *First*, they must be "reasonably related" to specified sentencing factors in 18 U.S.C. § 3553, including the "nature and circumstances of the offense" and the "history and characteristics of the defendant." *Id.* §§ 3583(d)(1), 3553(a)(1). *Second*, the conditions cannot mandate a "greater deprivation of liberty than is reasonably necessary" to deter future criminal conduct, protect the public, and rehabilitate the defendant. *Id.* § 3583(d)(2). *Third*, they must be "consistent" with the Sentencing Commission's relevant policy statements. *Id.* § 3583(d)(3).

As with all sentences, in addition to satisfying the statutory criteria, the district court must also explain its reasoning. It must "state in open court . . . its rationale for mandating special conditions of supervised release." *United States v. Childress*, 874 F.3d 523, 526 (6th Cir. 2017); *see also* 18 U.S.C. § 3553(c). For a sentence to be procedurally reasonable, the district court's explanation must "be sufficient to allow for meaningful appellate review." *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015) (citation modified); *see also United States v. Zobel*, 696 F.3d 558, 566 (6th Cir. 2012). While the district court enjoys discretion in how fulsome its explanation ought to be, that explanation still must assure us that the court "considered the parties' arguments." *Rita v. United States*, 551 U.S. 338, 356 (2007). To determine whether the district court has satisfied this standard, we look at the court's analysis in the transcript of the sentencing hearing. *See United States v. Doyle*, 711 F.3d 729, 733 (6th Cir. 2013).

Our review of the sentencing transcript from the revocation hearing reveals that the district court did not directly provide reasons for reimposing the sex-offender conditions, let alone sufficiently explain why it viewed these conditions as reasonably related to the purposes of sentencing and not unduly restrictive. The district never explicitly addressed its decision to impose

the sex-offender conditions, except to state that it would "look at that" later. Revocation Hr'g Tr., R. 50, PageID 228. This non-response is not only confusing, but it also violates the requirement that the district court's rationale for imposing special conditions be given "in open court." *Childress*, 874 F.3d at 526.

True, the court need not respond to each defense objection and argument if we can discern its rationale from its reasons for imposing a term of incarceration. *United States v. Matthews*, 155 F.4th 845, 854–55 (6th Cir. 2025). But we have combed the transcript, and the district court did not give us enough explanation at any point during the hearing.

The district court addressed harm that is sexual in nature at only one point. It confronted Troutman by saying, "You've got sex offenses in the past." Revocation Hr'g Tr., R. 50, PageID 226. It is unclear why the district court referred to "sex offenses" in the plural—there is only one sex offense in the record.[3] But even assuming the district court did not misperceive the record— and just inadvertently misspoke—it is still unclear that the court thought this singular sex offense from thirteen years before necessitated the sex-offense conditions it imposed. Especially given that Troutman had already completed the "sex offense specific assessment," and probation had determined that he did not need treatment, we are not persuaded that the court's one reference to the thirteen-year-old offense reflects its justification for reimposing the sex-offense conditions. *Cf. United States v. Carter*, 463 F.3d 526, 532 (6th Cir. 2006) (holding that a seventeen-year-old sex offense conviction did not justify imposing special sex-offender conditions); *United States v. Thomas*, 212 F. App'x 483, 488 (6th Cir. 2007) (similar).

---

[3] While Troutman also has a conviction for failing to register as a sex offender, this crime does not itself qualify as a sex offense. *Barcus*, 892 F.3d at 236.

The district court, in explaining its revocation sentence generally, also stated that it was concerned with protecting Troutman's girlfriend. After it criticized Troutman for taking "advantage of a weak and vulnerable person," the court explained that it had "a responsibility to her, too, that she's protected." Revocation Hr'g Tr., R. 50, PageID 226–27. It also expressed concern that, if drunk, he could get angry and hurt her again. But, as the government admits, this abuse "was not sexual." Appellee Br. at 16. The court's analysis demonstrates that Troutman has an extensive criminal history and that, based on his history, the court was appropriately concerned about protecting Troutman's girlfriend and the public. But such a generalized concern does not mean that any and all special conditions of supervised release are justified. It explains the alcohol condition, anger management treatment, and others, but not the conditions Troutman asks us to review.

Even together, the district court's single reference to the thirteen-year-old sexual battery and its general concern for protecting Troutman's girlfriend is not sufficient reasoning to allow for "meaningful appellate review" of its decision to reimpose the sex-offender conditions. *Zobel*, 696 F.3d at 566 (citation omitted). Therefore, the district court abused its discretion by failing to put its reasons for reimposing the sex-offender conditions on the record "in open court." *Childress*, 874 F.3d at 526.[4]

We are not persuaded by the government's counterarguments. It advances three arguments in support of affirming, but they are all nonresponsive. None addresses the procedural reasonableness of the district court's reimposition of the sex-offender conditions.

---

[4] Troutman also disputes the substantive reasonableness of the sex-offender conditions that the district court imposed on his 2026 sentence. Because we remand this case based on his procedural reasonableness challenge, we need not reach the question of substantive reasonableness. *See United States v. Gates*, 48 F.4th 463, 472 (6th Cir. 2022).

*First*, the government argues that Troutman's challenge is procedurally improper. It contends that Troutman cannot challenge the special conditions of supervised release that the district court imposed at his "original sentencing hearing" during his revocation hearing. Appellee Br. at 10. As the government correctly explains, we have "consistently held" that a defendant may not attack the terms of their supervised release during the hearing, or appeal, about violating those conditions. *United States v. Hall*, 735 F. App'x 188, 191 (6th Cir. 2018) (collecting cases). That rule means Troutman cannot attack the terms of supervised release that the district court imposed on his 2018 felon-in-possession conviction now that he has admittedly violated those terms.

The fatal flaw in the government's argument is that Troutman is *not* appealing the terms of supervised release imposed at his original sentencing hearing in 2018. Instead, Troutman appeals the new sentence that the district court imposed in 2026. Irrespective of whether the conditions were proper in 2018, Troutman argues that the district court's reimposition of the sex-offender conditions as part of his new sentence for violating the terms of his supervised release is procedurally unreasonable. Yes, it's a bit confusing. But, as the government is well aware, Troutman is allowed to appeal his revocation sentence, including the attendant conditions of supervised release. *See United States v. Lowenstein*, 108 F.3d 80, 81–86 (6th Cir. 1997); *United States v. Kelly*, 630 F. App'x 416, 418–22 (6th Cir. 2015). The government makes no argument that, just because conditions of supervised release attached to the original sentence, a defendant is forever barred from challenging them in the future if the district court reincorporates the same conditions into a separate revocation sentence. That argument would raise a host of statutory and due process concerns, so it is unsurprising that the government does not contend that Troutman cannot challenge his new revocation sentence now. It instead misconstrues his appeal as being to his original sentence, which is likewise unavailing.

*Second*, the government argues that Troutman waived his right to challenge the sex-offender conditions in his plea agreement. But this argument suffers from the same flaw as the first: The government mischaracterizes the scope of Troutman's appeal. Again, there are two sentences at issue: (1) the 2018 felon-in-possession sentence and (2) the 2026 revocation sentence. Troutman appeals only the later sentence here. Just because Troutman waived his right to challenge the former, does not mean he waived his right to challenge the latter. The government does not argue as much, and nothing in the plea agreement suggests as much. Thus, like the government's procedural argument, this waiver argument is inapt.

*Third*, the government argues that the district court's imposition of the sex-offender conditions in 2018 was procedurally and substantively reasonable. Because Troutman's counsel did not object to these conditions "when he was originally sentenced," the government requests plain error review. Appellee Br. at 14. And it argues repeatedly that there was no plain error in imposing the sex-offender conditions because Troutman's sexual battery convict was only "four years" old. *Id.* at 2, 10, 13, 16, 18, 19. This argument too misses the mark for the same reason as the government's other two counterarguments. As explained, Troutman does not argue that the original sentence was unreasonable. He argues that his 2026 sentence was unreasonable, and (over his objection) the court imposed that sentence thirteen years after his sexual battery, not four.

The government defends the reasonableness of Troutman's 2026 sentence with a single passing sentence. It argues that Troutman's "history and characteristics" not only justified the sex-offender conditions in 2018, but also "justified the continuation of sex-offender special conditions for his continued supervised release period." Appellee Br. at 17. This defense of the district court's 2026 sentence is so meager that it is difficult to ascertain whether the government even disagrees with Troutman that the district court's explanation was insufficient.

The government never addresses Troutman's argument that the district court procedurally erred by failing to explain its basis for the sexual-offense conditions in the revocation sentence. It does not direct our attention to anything in the revocation hearing transcript where, in its view, the district court explained the basis for these conditions. Instead, it argues that these conditions were "reasonably related" to Troutman's history and conditions. Appellee Br. at 16. But this argument seeks to justify the *substantive* reasonableness of Troutman's sentence, not its procedural reasonableness. *See Carter*, 463 F.3d at 528–29.

To the extent the government implies that the district court's procedural error was harmless because the reasons for the sex-offender conditions are "evident on the overall record" and related to rehabilitation and public safety, *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001), we reject that contention, too. While we have occasionally affirmed special conditions "on a silent record," we have only done so where the reasons for those conditions were "clear." *United States v. Widmer*, 511 F. App'x 506, 513 (6th Cir. 2013). For the reasons described above, the record is not so "obvious" as to excuse the district court's error. *United States v. Collins*, 799 F.3d 554, 599 (6th Cir. 2015).

## CONCLUSION

We vacate the sex-offender conditions that the district court added to Troutman's supervised release and remand to the district court for resentencing consistent with this opinion.

MURPHY, Circuit Judge, dissenting. David Troutman has followed a dangerous pattern of getting drunk and abusing his girlfriends. In July 2013, an "intoxicated and upset" Troutman believed that his girlfriend "was cheating on him" and violently forced her to perform oral sex until he was "satisfied that he choked her with his penis." Rep., R.22, PageID 89. Then, while on supervised release for a federal gun crime in October 2025, Troutman (who had been "drinking") "accused" his current girlfriend "of cheating" and "shove[d] his fingers down" her "throat" so aggressively that she began "coughing up blood[.]" Rep., R.42, PageID 189. This fresh round of violence led the district court to revoke Troutman's supervised release. When previously sentencing Troutman for the gun crime, the court had imposed special supervised-release conditions related to his prior sexual battery. It chose to reimpose these conditions for Troutman's revocation sentence. He now calls that choice both procedurally and substantively unreasonable. Given the new acts of domestic violence, though, the record leaves no doubt in my mind why the court imposed these conditions again. Unlike my colleagues, then, I do not view its sentence as procedurally unreasonable. Nor do I find the conditions substantively unreasonable because they reasonably relate to his proclivity to commit domestic violence. And because my colleagues do not reach Troutman's substantive challenge, the district court is free to reach the same conclusion on remand. Because I think it has already said enough, however, I respectfully dissent.

I

On November 2, 2017, police officers in Akron, Ohio, stopped a pickup truck for a cracked windshield. Troutman, a passenger in the truck, held a backpack on his lap when the officers approached. After he exited the vehicle, the officers spotted a syringe and a baggie with a small amount of white powder on the floor of his seat. The powder turned out to be methamphetamine. Officers searched the truck and discovered a sawed-off shotgun concealed in a coat behind a seat.

They also found three shotgun shells and more methamphetamine in Troutman's backpack. He admitted that he had put the shotgun and shells where the officers had found them.

At this time, Troutman also had warrants out for his arrest because he had violated the requirements of his sex-offender designation. He incurred this designation four years earlier in July 2013 when he violently assaulted a prior girlfriend. According to his presentence report, Troutman (while "intoxicated and upset") kicked on the door of this girlfriend's home until she let him in around 4:00 or 5:00 a.m. Rep., R.22, PageID 89. He hit and choked this woman and "slammed her head against the wall" because she refused to disclose her phone's password so he could investigate whether she had cheated on him. *Id.* He next forced her to the ground and demanded that she perform oral sex. She refused, pointing out that he had awakened their two-year-old son who "was right there." *Id.* But Troutman repeated his demand anyway. Ultimately, he forcibly required her to perform oral sex until he was "satisfied that he choked her with his penis." *Id.* After she still refused to disclose her phone's password, he threatened to "snap the necks" of their young children and tore up the home. *Id.* Although charged with rape, Troutman pleaded guilty to sexual battery in an Ohio court. He received a one-year prison sentence and was designated a Tier III sex offender. Following his prison time, Troutman repeatedly violated the terms of his release. Among other things, he committed many new drug and theft offenses.

During the stop in November 2017, then, the police arrested Troutman not just for his illegal drug and firearm possession but also for his failure to verify his address as required by his sex-offender designation. A fresh slate of state and federal convictions followed. A state court convicted Troutman of the failure-to-verify offense. It sentenced him to 18 months in prison.

While those state proceedings progressed, the federal government charged Troutman with various crimes. Troutman entered a plea agreement. He agreed to plead guilty to one count of

illegally possessing a firearm as a felon. The government agreed to dismiss the other two counts. And both parties agreed to recommend a within-guidelines sentence.

At sentencing, the district court calculated Troutman's guidelines range as 51 to 63 months' imprisonment. The court imposed a sentence of 55 months' imprisonment followed by three years of supervised release. Without objection from Troutman, it also imposed several special supervised-release conditions. Given Troutman's previous sex offense, the court required him to undergo a "sex offender assessment protocol," submit to a "polygraph examination" on a periodic basis, and participate in a "cognitive behavioral treatment program[.]" Sentencing Tr., R.53, PageID 242. The judgment listed a "sex offense specific assessment" and "sex offense-specific treatment" as part of these supervised-release conditions. Am. Judgment, R.27, PageID 128.

Troutman left prison to start his three-year term of supervised release in April 2023. The first two and a half years went by without incident. He never tested positive for drug use. He worked as a tattoo artist and hoped to save enough money to start his own shop. And he completed a sex-offender assessment. The evaluators did not recommend him for any sex-offender treatment. Troutman also sat for various polygraph examinations. Although one examiner found that he had acted with deception, his probation officer noted that the deception concerned conduct (contact with minors) that was unrelated to his "risk factors." Rep., R.42, PageID 190.

In October 2025, though, Troutman again found himself in trouble for domestic violence. According to a police report, his girlfriend said that the couple had both been drinking when "out of nowhere Troutman accused her of cheating." *Id.*, PageID 189. Troutman violently "shove[d] his fingers down" his girlfriend's "throat," and she began "coughing up blood[.]" *Id.* His girlfriend screamed in the hope that neighbors would call the police. *Id.* A responding officer saw "blood

on her chin, neck and upper shirt area," open cuts in her throat, and "dried blood" on Troutman. *Id.* The police arrested Troutman and charged him with domestic violence.

On learning of this new crime, Troutman's probation officer investigated. She discovered that the same girlfriend had gone to the police the prior month based on a similar incident. During that earlier incident, she accused Troutman of "grabb[ing] her around the mouth and side of her neck" and breaking her phone. *Id.* But prosecutors did not pursue charges for these assaults because Troutman's girlfriend refused to cooperate. Still, the probation officer notified the district court of this potential supervised-release violation and recommended that the court hold a hearing.

The district court accepted this recommendation. At the hearing, Troutman admitted that he had "altercations" with his girlfriend but claimed that he did not "comprehend" what he was doing because of his drinking. Tr., R.50, PageID 226. His counsel also explained that he was still together with his girlfriend, had stopped drinking, and had entered anger-management counseling. Troutman's counsel thus asked the court to let him complete his supervised-release term.

Separately, Troutman's counsel (who had not represented him in the original felon-in-possession proceedings) suggested that his earlier attorney should have objected to the special sex-offense and polygraph conditions because they had nothing to do with his felon-in-possession conviction. When the court asked what this complaint had to do with the current hearing, counsel "apologize[d] for delaying the Court" but noted that these conditions had been "listed in the" probation officer's "report" and that she wanted to say her "gripe" about them. *Id.*, PageID 222.

The court revoked Troutman's supervised release. When speaking with him, it noted that he had "sex offenses" in his past and that he had again taken "advantage of a weak and vulnerable person." *Id.*, PageID 226. The court found Troutman's violence against his girlfriend "completely unacceptable," adding that "nobody deserves to be treated like this." *Id.*, PageID 227. As the

court also opined, it had a "responsibility" to ensure that his girlfriend was "protected" and could not "take a chance" that he might harm her again during an alcohol relapse. *Id.*, PageID 227–28. Although Troutman's guidelines range was 8 to 14 months' imprisonment, the court varied below that range by imposing a six-month term with one year of additional supervision. It reimposed the same supervised-release conditions as before plus a prohibition on drinking alcohol.

At the hearing's end, counsel formally objected to the sex-offender and polygraph conditions for the reasons she had given earlier in the hearing. The court responded by saying "I'll take a look at that after I get this." *Id.*, PageID 228. The hearing then ended (with a lack of clarity by what the court meant by "this"). But the court later issued an order imposing "the same conditions as previously ordered" along with (among other things) a ban on Troutman's alcohol use and a requirement that he get anger-management treatment. Order, R.47, PageID 213.

II

Troutman challenges the district court's decision to reimpose the special supervised-release conditions that he undergo a sex-offender assessment, participate in any recommended sex-offender treatment, and take polygraph examinations. At the outset, the government raises several procedural objections to this challenge. It claims that Troutman may not use revocation proceedings to attack supervised-release conditions imposed at his original sentencing. It claims that the appellate waiver in Troutman's plea agreement covers not just challenges to his original sentence but also challenges to his sentence on a supervised-release revocation. And it claims that we at least must review Troutman's claims under the deferential plain-error test. My colleagues reject all these arguments. But because I would affirm on the merits, I would not enter this debate.

The sentencing laws give district courts discretion to impose unique supervised-release conditions that they find "appropriate" for a defendant. 18 U.S.C. § 3583(d). Yet any special

-16-

condition must satisfy three requirements. *See United States v. Zobel*, 696 F.3d 558, 573 (6th Cir. 2012). It must be "reasonably related" to several of the sentencing factors in 18 U.S.C. § 3553(a). *Id.* § 3583(d)(1). It must "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes" identified in some of those factors. *Id.* § 3583(d)(2). And it must comport with "any pertinent policy statements" from the Sentencing Commission. *Id.* § 3583(d)(3).

We review a district court's decision to impose a special supervised-release condition for abuse of discretion. *See United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007). And when undertaking this review, we must ensure that a supervised-release condition (just like a term of imprisonment) is both procedurally and substantively sound. *See United States v. Carter*, 463 F.3d 526, 528–29 (6th Cir. 2006). Here, Troutman argues that the district court abused its discretion both for a procedural reason (because it did not discuss why it reimposed the challenged special conditions) and for substantive ones (because those conditions do not relate to his felon-in-possession offense and are overly burdensome). In my view, he is twice mistaken.

## A. Procedural Challenge

In two pages of argument, Troutman first asserts (and the majority agrees) that the district court did not adequately explain its decision to reimpose the challenged conditions during the revocation hearing. *See United States v. Doyle*, 711 F.3d 729, 732–33 (6th Cir. 2013). Troutman is correct that a district court must give its "reasons" for imposing these conditions. *Zobel*, 696 F.3d at 572 (quoting *Carter*, 463 F.3d at 528–29). But he is wrong to suggest that a district court must give *unique* reasons apart from its justifications for the overall sentence. We have instead held that a court's *generic* discussion of the sentencing factors in § 3553(a) can adequately convey its reasons for imposing the special conditions. *See United States v. Matthews*, 155 F.4th 845, 854 (6th Cir. 2025); *United States v. Henry*, 819 F.3d 856, 874 (6th Cir. 2016). In *Matthews*, for

example, we upheld a special condition allowing the probation office to randomly search a defendant's "electronic devices" because the district court generically discussed a need to "protect[] the public from those" like the defendant "who traffic fentanyl-laced drugs." 155 F.4th at 854. We saw a connection between this general concern and the special condition because that condition likewise helped to deter the defendant's future drug offenses. *See id.* at 854–55.

Here too, the district court's generic reasons reveal the basis for the special conditions: to deter Troutman's violence against women. *See Zobel*, 696 F.3d at 572. At the revocation hearing, the court explained that Troutman had "sex offenses in the past" and that he had again taken "advantage of a weak and vulnerable person." Tr., R.50, PageID 226. The court thus expressed a concern for the safety of Troutman's girlfriend, pointing to its "responsibility" to ensure "she's protected." *Id.*, PageID 227. It could not "take a chance" that Troutman might again get drunk and "angry" and engage in more domestic abuse—as he had done against both his prior girlfriend and his current one. *Id.*, PageID 227–28. So the need "to protect the public from" Troutman's "further crimes" and to "afford adequate deterrence" drove the court's decisionmaking. 18 U.S.C. § 3553(a)(2)(B)–(C). We thus need make "only a slight inference" to find that the court imposed the conditions to reduce the risk that Troutman would commit domestic violence "while on supervised release." *Matthews*, 155 F.4th at 854–55 (quoting *Zobel*, 696 F.3d at 572).

True, the court originally imposed these conditions because of Troutman's sex-offender status, presumably to ensure he did not commit similar sex offenses in the future. Also true, Troutman's recent conduct was not explicitly sexual. But his recent conduct is disturbingly similar to his prior offense. In both incidents, Troutman got intoxicated and angry. In both incidents, he accused his girlfriend of cheating. And in both incidents, he forced body parts down his girlfriend's throat. It is easy to understand why the district court thought Troutman's conduct

warranted the same conditions he had received years ago. At day's end, the conditions all relate to Troutman's propensity for this type of domestic abuse. And "the record" makes "clear" why the district court thought those conditions necessary. *United States v. Collins*, 799 F.3d 554, 599 (6th Cir. 2015); *see United States v. Lantz*, 443 F. App'x 135, 144–45 (6th Cir. 2011).

My colleagues respond that the court stated that it would "take a look at" Troutman's objection at the end of the hearing and did not give an on-the-record rebuttal. Tr., R.50, PageID 228. Yet Troutman's two pages of argument on this procedural-reasonableness claim did not rely on this omission. Appellant's Br. 14–15. His decision not to argue the point makes good sense. Although a lawyer's objections may give the sentencing court an *opportunity* to respond, the objections do not create an *obligation* to do so. *See United States v. Mitchell*, 107 F.4th 534, 542 (6th Cir. 2024). And because the court had adequately "state[d] in open court the reasons" for its sentence (including the conditions), it had no need to elaborate with an additional post-hoc explanation. *United States v. Childress*, 874 F.3d 523, 526 (6th Cir. 2017) (citation omitted).

Troutman's counterarguments fare no better. He compares the district court's discussion in this case to the discussion we found inadequate in *Doyle*. There, the defendant had committed "attempted sexual abuse in the first degree" in New York, which required him to register as a sex offender. *Doyle*, 711 F.3d at 731. (Our opinion does not describe the conduct underlying this offense.) After the defendant moved to Tennessee, he "failed to register" as a sex offender in this new location. *Id.* at 732. He pleaded guilty to a federal failure-to-register offense. *Id.* at 731. The district court imposed several special supervised-release conditions, including that he avoid legal pornography, have no contact with minors, "not use sexually-oriented telephone numbers or computer services," and obtain his probation officer's permission before accessing a computer with internet access. *Id.* at 732. We vacated these conditions because the court offered "no

explanation" for them. *Id.* at 733. And we could not infer any explanation for the conditions that was obvious from the defendant's prior sex offense or his current failure-to-register offense. *Id.*

This case is different. Unlike in *Doyle*, the district court generally explained its sentence based on the need to protect the public from Troutman's violence. Indeed, Troutman's violation of his supervised-release conditions involved domestic violence against his girlfriend that resembled the conduct underlying his prior sexual-battery conviction. Because we can infer the basis for the court's special conditions, this case resembles *Matthews*, not *Doyle*.

Troutman also argues that the district court misstated his criminal history when imposing the special conditions. The court noted that Troutman had committed "sex offenses" in the plural, but Troutman asserts that he committed only one sexual battery (and no other sexually violent crimes). Tr., R.50, PageID 226. Yet Troutman did not object to this alleged misstatement at the revocation hearing. So I would review it for plain error. *See United States v. Holt*, 116 F.4th 599, 612–13 (6th Cir. 2024). And the statement was not obviously wrong. *See id.* at 613. The district court did not disclose what it meant by "sex offense." And it might have meant for the phrase to cover Troutman's crimes associated with his sex-offender designation, such as his failure to verify his address. To be sure, I agree that "[f]ailure to register is not a 'sex offense'" in the technical sense. *United States v. Barcus*, 892 F.3d 228, 236 (6th Cir. 2018). But the district court may have used the phrase in a colloquial sense to refer more broadly to conduct that has "to do with sex." *Id.* And failure-to-register crimes have "everything to do with sex" (regardless of whether they fall into the technical definition of "sex offense"). *Id.* If the phrase is construed broadly, then, the district court would have been right to state that Troutman had multiple "sex offenses."

Besides, even if we interpret the phrase narrowly, this minor misstatement would not render Troutman's sentence procedurally unreasonable. He points to no evidence suggesting that the

misstatement "prejudiced him" in any way. *Holt*, 116 F.4th at 613; *see United States v. Hatcher*, 947 F.3d 383, 394 (6th Cir. 2020); *United States v. Parks*, 2023 WL 4543486, at *5 (6th Cir. July 14, 2023); *see also United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019). For example, nothing in the record suggests that the court believed that Troutman had committed multiple sexually violent crimes. When discussing Troutman's criminal history, both his attorney and the government referred only to the prior sexual-battery conviction. Tr., R.50, PageID 221, 223. And the district court did not make any statements indicating that it believed Troutman had a lengthier criminal history. I thus see no basis for concluding that the misstatement "had any effect on his sentence." *United States v. Beattie*, 2026 WL 1383339, at *2 (6th Cir. May 18, 2026). Indeed, Troutman's own argument confirms this point. The district court made this comment while imposing its overall sentence, including the six-month prison term. Yet Troutman does not claim that the statement rendered his prison sentence procedurally unreasonable. And it likewise did not render his special supervised-release conditions procedurally unreasonable.

## B. Substantive Challenge

Because I would find Troutman's sentence procedurally reasonable, I must confront his primary challenge: that the special supervised-release conditions are substantively unreasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Troutman contends that the conditions do not satisfy the three requirements for imposing them in 18 U.S.C. § 3583(d). In particular, he argues that the sex-offender assessment and potential treatment are not reasonably related to the § 3553(a) factors. And he argues that the requirement to take polygraph exams is too burdensome. But the district court reasonably imposed all these conditions. *See Brogdon*, 503 F.3d at 563.

*Sex-Offender Conditions*. Troutman first criticizes the conditions reimposing a sex-offender assessment (and potential sex-offender treatment). His challenge turns on the subpart of

§ 3583(d) that requires a special condition to be "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)[.]" 18 U.S.C. § 3583(d)(1). These specific § 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" along with the need for "deterrence" and "to protect the public from" the defendant's future crime. *Id.* § 3553(a)(1), (a)(2)(B)–(C). We have held that a special condition need only relate to one of these § 3553(a) factors. *See Barcus*, 892 F.3d at 235. So a district court may impose sex-offender conditions based on a defendant's "history and characteristics" even if the "circumstances" of the crime of conviction had nothing to do with sexual misconduct. 18 U.S.C. § 3553(a)(1); *Childress*, 874 F.3d at 527 n.2; *United States v. Cabrera-Jimenez*, 545 F. App'x 385, 388–89 (6th Cir. 2013); *Brogdon*, 503 F.3d at 565–66; *United States v. Perkins*, 207 F. App'x 559, 561–62 (6th Cir. 2006).

The district court did not abuse its discretion by concluding that the sex-offender conditions were "reasonably related" to Troutman's "history and characteristics" and the need to protect women from violence. 18 U.S.C. §§ 3583(d)(1), 3553(a)(1), (a)(2)(B)–(C). Among other reasons, Troutman remains a registered sex offender who committed a violent sexual battery in 2013. He also committed a failure-to-verify offense in 2017—a type of offense that can justify sex-offender conditions. *See Barcus*, 892 F.3d at 236. Plus, a district court need not limit itself to a defendant's "prior criminal convictions" when imposing supervised-release conditions. *Childress*, 874 F.3d at 528. So the district court could consider Troutman's recent violent acts against his girlfriend. *See id.* at 528–29. And although those acts did not involve a "rape or sexual assault," they continued a trend of "aggressive behavior toward women" that the conditions might "help ameliorate." *Perkins*, 207 F. App'x at 561; *cf. United States v. Hill*, 150 F. App'x 416, 422–23 (6th Cir. 2005).

All told, I have no "definite and firm conviction" that the sex-offender conditions are unrelated to Troutman's history and characteristics. *Childress*, 874 F.3d at 526 (citation omitted).

Troutman retorts that these conditions are not "reasonably related" to his underlying felon-in-possession offense. *Carter*, 463 F.3d at 530 (quoting 18 U.S.C. § 3583(d)(1)). But the district court need not find that a condition relates to every sentencing factor identified in § 3583(d)(1). *See Barcus*, 892 F.3d at 235. The court thus could impose the condition based on his history and characteristics alone without regard to the nature of his underlying conviction. *See Childress*, 874 F.3d at 527 n.2.

Troutman next asserts that the special conditions do not even relate to his history and characteristics because his prior sexual-battery conviction occurred too long ago. True, some of our cases have found a defendant's prior sex offense "too remote in time to justify" sex-offender conditions. *Carter*, 463 F.3d at 531; *see United States v. Hundley*, 625 F. App'x 274, 277 (6th Cir. 2015); *United States v. Thomas*, 212 F. App'x 483, 487 (6th Cir. 2007). In these cases, the defendants had committed their prior sex crimes at least 17 years in the past, and nothing about their current crimes resembled those prior offenses or suggested that they might reoffend. *Carter*, 463 F.3d at 532; *see Hundley*, 625 F. App'x at 277; *Thomas*, 212 F. App'x at 487. But, unlike those defendants, Troutman's earlier conduct does not stand in isolation. Troutman had two recent incidents involving "aggressive behavior toward" his girlfriend that resembled his prior sexual battery. *Perkins*, 207 F. App'x at 561. A shorter time gap also existed between the prior sexual battery (in 2013) and the current domestic violence (in 2025). And that time gap is effectively even shorter because Troutman spent much of this period in prison.

Troutman counters that *Esteras v. United States*, 606 U.S. 185 (2025), requires us to disregard his recent violence toward his girlfriend. But *Esteras* holds no such thing. It concluded

that district courts may not consider a *different* sentencing factor—the one in § 3553(a)(2)(A)—when punishing supervised-release violations. *See id.* at 188. Yet Troutman's violence toward his girlfriend formed part of his "history and characteristics," 18 U.S.C. § 3553(a)(1), and *Esteras* sets no bar on the use of that distinct factor, *see* 606 U.S. at 191–92.

Troutman lastly attributes this recent physical violence against his girlfriend to his alcohol problem, claiming that the violence had nothing to do with his sex-offender propensities. Yet he also committed his prior sexual violence while "intoxicated and upset" with his previous girlfriend. Rep., R.22, PageID 89. And he admitted that he could not "comprehend"—and thus control—his actions. Tr., R.50, PageID 226. The district court could reasonably conclude that it would best protect the public from Troutman's future violence if it imposed multiple preventive measures rather than just one. So I fail to see why it had to avoid requiring a sex-offender assessment and treatment just because it also required Troutman to avoid alcohol.

*Polygraph Examination*. Troutman next criticizes the supervised-release condition that he take polygraph examinations. This separate challenge turns on a different part of § 3583(d). Section 3583(d)(2) also requires any special condition to "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)[.]" 18 U.S.C. § 3583(d)(2). Troutman argues that the polygraph requirement intrudes on his liberty more than necessary. Yet when we have held that sex-offender conditions were reasonably related to the § 3553(a) factors, we have also found that polygraph examinations did not impose undue intrusions on a defendant's liberty. *See Barcus*, 892 F.3d at 237; *see also United States v. Pate*, 2025 WL 1342740, at *6 (6th Cir. May 8, 2025); *United States v. Teeple*, 447 F. App'x 712, 713 (6th Cir. 2012) (per curiam).

The district court did not abuse its discretion by reaching the same conclusion here. For one thing, the record contains no evidence that this condition has been overly invasive in the past. Troutman must participate in these polygraph examinations only "at the discretion of [his] probation officer[.]" Am. Judgment, R.27, PageID 128. During his first term of supervised release, he submitted to one polygraph in October 2024 and a maintenance polygraph over a year later in November 2025. For another thing, other evidence shows the need for reimposing this condition. Troutman, for example, responded with deception during his maintenance polygraph exam when he was asked about minors. Although the probation officer did not think this deception implicated Troutman's "risk factors" because he had no convictions involving minors, she ordered a follow-up polygraph as a precaution. Rep., R.42, PageID 190. Troutman, moreover, initially lied to the police about his recent abuse of his girlfriend.

In sum, the district court acted within its discretion by requiring Troutman to participate in a sex-offender assessment, potential sex-offender treatment, and polygraph testing.

I respectfully dissent.